UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RODNEY L. MARSHALL, ) | Case No.: 2:05-CV-01391-RLH-PAL |
| ) | |
| Plaintiff, ) | **O R D E R** |
| ) | |
| vs. ) | (Motion for Summary Judgment–#9) |
| ) | |
| JAMES GREG COX, MARLENE ) | |
| WILLICK, DR. JOHN KILEY, ) | |
| MARK REEPING, ) | |
| DIANE CARMACK., ) | |
| ) | |
| Defendants. ) | |

Before the Court is Defendants James Greg Cox, Marlene Willick, Dr. John Kiley, Mark Reeping, and Diane Carmack's (collectively hereinafter Defendants) **Motion for Summary Judgment** (#9), filed April 7, 2006. Plaintiff Rodney L. Marshall (hereinafter Plaintiff), appearing pro se, has failed to file an Opposition to the instant Motion for Summary Judgment.

**BACKGROUND**

The events giving rise to Plaintiff's complaint are as follows. During the spring of 2004 Plaintiff was incarcerated at High Desert State Prison (hereinafter HDSP), which is within the Nevada Department of Corrections (hereinafter NDOC). Plaintiff alleges that on or about April 29, 2004, the State of Nevada and its agent Defendant James Greg Cox placed him in a cell

1

in the Intake Unit at HDSP. Plaintiff alleges that during this time, James Greg Cox was the warden of HDSP. In opposition, James Greg Cox (hereinafter Warden Cox) states that he was not warden at HDSP until August 23, 2004. On May 6, 2004, Plaintiff alleges that an unknown person or persons placed inmate Vernelius Phillips (hereinafter Inmate Phillips) in his cell.

Plaintiff alleges that Inmate Phillips was a very sick and violent man. Plaintiff alleges that on several occasions Inmate Phillips told him that he had been sentenced to two life sentences and that he heard voices. Plaintiff states that Inmate Phillips told him that these were the same voices which told him to commit his crime. According to Plaintiff, Inmate Phillips said that the voices were telling him to kill something or someone again.

Plaintiff alleges that he repeatedly asked Defendant Senior Correction Officer Mark Reeping (hereinafter Officer Reeping) and Defendant Senior Correction Officer Diane Carmack (hereinafter Officer Carmack) to move him to a different cell, because of Inmate Phillips' threats. Plaintiff states that both Officer Reeping and Officer Carmack failed to take any steps to protect him. In opposition, Officer Carmack states in her affidavit that she does not remember either Plaintiff or Inmate Phillips. Plaintiff states that on May 11, 2004, he repeated his complaints to Officer Reeping. Plaintiff alleges that Officer Reeping responded, "I don't care," refused to do a bed move, and told him to write a kite to Defendant Caseworker Marlene Willick, who was the caseworker for the Intake Unit. Officer Reeping states that Plaintiff never told him anything which led him to believe that Inmate Phillips posed a substantial risk of serious harm.

Plaintiff alleges that he did write a kite to Defendant Caseworker Marlene Willick (hereinafter Caseworker Willick) and she appeared at his cell three or four days later. According to Plaintiff, Caseworker Willick told him that she could not move him unless he received a disciplinary notice of charges and she would then house him in punitive confinement. Caseworker Willick states that she never received any information which led her to believe that Inmate Phillips posed a substantial risk of serious harm to Plaintiff.

On May 12, 2004, Plaintiff was seen by Defendant Senior Psychiatrist John Kiley, M.D. (hereinafter Dr. Kiley). Plaintiff states that he made similar complaints to Dr. Kiley about Inmate Phillips. Plaintiff further alleges that he informed Dr. Kiley of additional facts, including that Inmate Phillips had stated he would kill someone or something before being transferred to a maximum security prison. Plaintiff also alleges that he told Dr. Kiley that he was in fear for his life and unable to sleep due to the stress of being housed with Inmate Phillips. Plaintiff alleges that Dr. Kiley told him not to worry about Inmate Phillips, that he did not do bed moves, and that the officers had to do it. In opposition, Dr. Kiley states that within approximately one hour of seeing Plaintiff, he interviewed Inmate Phillips and did a psychological workup of him. Dr. Kiley states that during the interview he did not find Inmate Phillips to be hallucinating, delusional, or having suicidal or homicidal ideation. Dr. Kiley states that he found Inmate Phillips to be stable on medication. Dr. Kiley also states that, based on a reasonable degree of medical certainty, Inmate Phillips did not pose a substantial risk of harm to anyone. Dr. Kiley also states that if he had found Inmate Phillips to be a risk, then he would have hospitalized him.

On May 25, there was an altercation between Plaintiff and Inmate Phillips in their cell. Plaintiff alleges that Inmate Phillips attacked him while he was lying in his bunk. Plaintiff alleges that Inmate Phillips kicked him and knocked him to the ground, which injured his back. Plaintiff states that the attack caused severe lower back pain and has affected his mental health. Defendants allege that the only objective physical injuries Plaintiff suffered in this fight were superficial scratches. In addition, Defendants state that the fight was not an attack, but instead a mutual combat situation in which Plaintiff was more blameworthy and cite to the disciplinary record from on or about June 21, 2004. Defendants point out that Plaintiff's statement to the disciplinary hearing about the altercation was noted as: "He (Inmate Phillips) kept putting his feet on me to get on the top bunk. That's what started the fight."

On November 21, 2005, Plaintiff, acting pro se, pursuant to 42 U.S.C. § 1983 filed a Complaint alleging that Defendants violated his Eight and Fourteenth Amendment rights because

they failed to protect him from Inmate Phillips. Plaintiff also requests that this Court exercise supplemental jurisdiction over his state law claims pursuant to NRS 41.032, 41.0322, 41.033, 209.161 and 209.341. On December 8, 2005, Plaintiff filed an Amended Complaint. On April, 7, 2006, Defendants filed the instant Motion for Summary Judgment. Plaintiff has not filed an Opposition to Defendants' Motion for Summary Judgment. However, Plaintiff's Complaint and Amended Complaint are signed under perjury of law and therefore, serve as his affidavit.

After reviewing the facts in this case, the Court will grant summary judgment in favor of all of Defendants on all §1983 issues and remand all state statutory issues to state court.

**DISCUSSION**

**I. Summary Judgment standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the non-moving party. Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982), cert. denied, 460 U.S. 1085 (1983).

Once the moving party satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256; Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," Bhan v. NME

Hosp., Inc., 929 F.2d 1404 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 586 (1986).

In *Celotex*, the Supreme Court stated that Federal Rule of Civil Procedure 56(c) mandated the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**II. 42 U.S.C. § 1983**

"To state a claim under § 1983, a plaintiff must (a) allege the violation of a right secured by the Constitution and the laws of the United States, and (b) must show that the alleged deprivation was committed by a person acting under color of law." West v. Atkins, 487 U.S. 42, 48-49 (1988). Liability under § 1983 may be imposed on local governments only when their policies or customs cause their employees to violate another's constitutional rights. Monell v. New York City Dept. of Soc. Serve., 436 U.S. 658, 691 (1978).

**A. Eighth Amendment - Cruel and Unusual Punishment Claim**

The Eight Amendment states that cruel and unusual punishments shall not be inflicted. U.S. Const. amend. VIII. The Fourteenth Amendment provides, in relevant part, that "No state shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1. The Eight Amendment applies to the states through the due process clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666 (1962). Cruel and unusual punishment is the "wanton and unnecessary infliction of pain." *Wilson v. Shelter*, 501 U.S. 294, 297 (1991). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; they must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," *Farmer v. Brennan*, 511 U.S. 826, 832 (1994). (quotations omitted). The protection an

5

inmate is afforded against other inmates has been described as a condition of confinement subject to the strictures of the Eighth Amendment. *Farmer*, 511 U.S. at 832-833. A prison official violates the Eight Amendment only when two requirements are met. The first is an objective requirement, where "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. The second is a subjective requirement, where the prison official must have a sufficiently culpable state of mind. *Id.* Specifically, the prison official must have a deliberate indifference to inmate health or safety. *Id.*

Deliberate indifference is found where a prison official denies an inmate humane confinement, because the official knows of and disregards an excessive risk to inmate health or safety and the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he draws the inference. *Id.* at 837. A prison official is liable under the Eight Amendment if he disregards a substantial risk of serious harm by failing to take reasonable measures to abate it. *Id.* at 847. Prison officials who take reasonable actions cannot be found liable, even if the harm was not ultimately averted. *Id.* at 844. "Mere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. Dottily,* 95 F.3d 586, 590 (7th Cir.1996).

**1. Defendant Warden Cox**

Plaintiff alleges that Warden Cox is liable to him, because he was employed as warden at HDSP at the time of the alleged violations of his Eight Amendment rights. In opposition, Warden Cox states in his affidavit that he was not employed at HDSP until August 23, 2004, which is approximately three months after the altercation on May 25, 2004.

The Court will dismiss Warden Cox from this case. Under *Celotex*, in order to hold Warden Cox liable, Plaintiff must make a showing sufficient to establish the existence of the essential element, i.e. that Warden Cox was employed at HDSP during the relevant time. In light of Warden Cox's affidavit and present ability to prove this fact definitively, in comparison to Plaintiff's bare allegations, which remain factually unsupported, the Court finds that Plaintiff has

failed to make the necessary showing. Therefore, the Court will dismiss Warden Cox from the instant case.

**2. Remaining Defendants**

Plaintiff makes similar allegations about informing each of the remaining Defendants about Phillip's threats. Plaintiff alleges that each Defendant is liable to him for violating his Eight Amendment rights because Defendants were deliberately indifferent in failing to protect him from Inmate Phillips.

There is a dearth of factually analogous case law in the Ninth Circuit regarding deliberate indifference. Therefore, the Court will follow the persuasive authority in *Luttrell v. Nickel*, 129 F.3d 933 (7th Cir. 1997) because it reaches a reasonable conclusion on facts that are virtually identical to the instant case. Under *Luttrell*, the Court will grant Defendants Officer Reeping, Officer Carmack, Caseworker Willick, and Dr. Kiley's instant Motion for Summary Judgment because of the factual similarity between this case and *Luttrell*, where the court upheld the granting of summary judgment in favor of a defendant prison official. *Luttrell*, 129 F.3d at 936. Even if the Court assumes the facts are as Plaintiff states them to be, the Court finds no genuine issue of material fact.

There are several factual similarities between the instant case and *Luttrell*. First, the *Luttrell* plaintiff, who was also an inmate, alleged that a prison official had violated his Eighth Amendment rights by failing to protect him from a sexual assault by his cell mate. *Luttrell v. Nickel*, 129 F.3d at 934. The *Luttrell* plaintiff inmate's cell mate appeared to be stable on medication, but was exhibiting psychological problems, including a voice in his head instructing him to make a sacrifice by killing someone, which is virtually identical to the instant case. *Id.* at 934.

Second, here as in *Luttrell*, the defendant prison officials had no reason to believe that the disturbed cell mate was a substantial risk of serious harm, if he took his medication. Based on the following facts the Court finds that Inmate Phillips was generally known to be stable

7

on medication, and therefore not a substantial risk of harm to anyone throughout the period in question. Caseworker Willick describes in her affidavit the procedure used at HDSP to identify inmate characteristics that would prevent housing certain inmates together. Some of the factors are: HIV status, youth, gang affiliation, and identified enemies. These factors often necessitate housing an inmate either with others like himself or those who will not be hostile to him. Caseworker Willick states that neither Plaintiff nor Inmate Phillips fit into any category that would have initially precluded housing them together on May 6, 2004.

Dr. Kiley states in his affidavit that when he interviewed Inmate Phillips on May 12, 2004, he found that Inmate Phillips was not hallucinating, delusional, suicidal or homicidal, but instead was stable on medication. Dr. Kiley states that it was his opinion, based on a reasonable degree of medical certainty, that Inmate Phillips did not pose a substantial risk of harm to anyone, either staff or other inmates.

Third, the *Luttrell* court found that there was no deliberate indifference pursuant to the standard set forth in *Farmer*, because the official there did not have actual knowledge of a substantial risk of harm to the plaintiff. *Id.* at 936. Here, as in *Luttrell*, Inmate Phillips' threats were non-specific. Plaintiff alleges that Inmate Phillips heard voices telling him "to kill something or somebody." In *Luttrell*, the cell mate heard a voice in his head "instructing him to make a 'sacrifice' by killing someone." *Luttrell*, 129 F.3d at 934. Even assuming that Inmate Phillips made non-specific threats to Plaintiff, Inmate Phillips was generally known by Defendants to be stable on medication and thus Defendants did not have actual knowledge that Inmate Phillips posed a substantial risk of harm to Plaintiff. Furthermore, under these facts as Plaintiff alleges them to be, Defendants' various reactions appear reasonable. Prison officials who take reasonable actions cannot be found liable, even if the harm was not ultimately averted. *Farmer,* 511 U.S. at 844. In addition, there were no prior altercations between Plaintiff and Inmate Phillips before May 25, 2004. Therefore, the only indication that Defendants might have had that Inmate Phillips posed a threat to Plaintiff, were Plaintiff's complaints, which were unsupported by objective

evidence. Therefore, Defendants were not deliberately indifferent, because under *Farmer*, to be deliberately indifferent prison officials must have actual knowledge of a substantial risk of serious harm and disregard it.

Fourth, here as in *Luttrell*, Plaintiff complained to prison officials about his cell mate's disturbing behavior. In *Luttrell*, the official responded by laughing and said that the plaintiff's disturbed cell mate would be okay if he took his medication, and informed the plaintiff that he would have to talk with someone else. *Id.* at 934-35. The *Luttrell* court found that even if the official responded to the plaintiff's complaint with laughter, that this did not amount to deliberate indifference. *Id.* at 936. Here, Plaintiff states that each of the Defendants either ignored his complaints or suggested that he should contact another official regarding his situation. Even assuming that Defendants were negligent in ignoring Plaintiff, or failing to follow up on his complaints, or by giving him incomplete information, this is not deliberate indifference. Under *Snipes*, a defendant prison official's mere negligence or even gross negligence does not constitute deliberate indifference. *Snipes,* 95 F.3d at 590.

Thus, Defendant's Motion for Summary Judgment will be granted, because Defendants were not deliberately indifferent and Plaintiff's Eighth Amendment rights were not violated.

**III. State Law Claims**

Because the Court has granted summary judgment on Plaintiff's § 1983 claims, the Court refuses to assert supplemental jurisdiction, and instead, will remand the state law claims to state court.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#9) on Plaintiff's § 1983 claims for the violation of his Eight and Fourteenth Amendment rights is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's state law claims are remanded to state court.

Dated:   July 17, 2006.

_____
**ROGER L. HUNT**
**United States District Judge**